# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **FORREST CUPIL,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 05 C 6206 ) |
| **JOHN E. POTTER, Postmaster General,** | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This is an action for sex discrimination and retaliation brought under Title VII of the Civil Rights Act of 1964 by Forrest Cupil ("Cupil") against his former employer, John E. Potter ("Potter"), the Postmaster General of the United States. Cupil appears *pro se*. Potter and Cupil have filed cross-motions for summary judgement.[1] For the following reasons, I grant Potter's motion and deny Cupil's motion.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir.

---

[1] Cupil did not immediately file a proper response to Potter's motion for summary judgment, but after the deadline set for a response he did file his own motion for summary judgment. I will treat Cupil's motion for summary judgment as both a response to Potter's motion and as a separate motion for summary judgment, since it responds to the facts set forth in Potter's motion as well as asserting Cupil's own arguments in support of summary judgment.

2006) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party meets this burden, the non-moving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Id.* at 694 (citing FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990)). The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson*, 477 U.S. at 255.

Taking the facts in the light most favorable to Cupil, the following are the facts relevant to the present motions:[2] Cupil was previously employed by the Postal Service as a maintenance mechanic in a postal facility in Chicago (the "Chicago facility"). During his employment the Postal Service subjected Cupil to several disciplinary actions. On November 30, 2002, the Postal Service issued Cupil an "emergency placement" in off-duty status for an

---

[2]As this opinion explains, there is no basis to grant summary judgment for Cupil; there are simply too many uncontroverted facts supporting Potter's arguments that Cupil cannot prove his claims, and Cupil has not presented sufficient facts that, if true, would establish his claims. This opinion focuses on whether I should grant Potter's motion for summary judgment, so I take the facts in the light most favorable to Cupil.

2

offense the Postal Service termed as "conduct unbecoming a postal employee." According to incident reports, the Postal Service placed Cupil on such status because he and another postal employee, "S.H." had made cross-complaints accusing each other of making threats. Cupil contends that he contacted postal police after S.H. contacted him at home and threatened him; he disputes that he threatened S.H.

On December 13, 2002, the Postal Service issued Cupil a memorandum entitled a "Zero Tolerance Policy Reminder." The memorandum instructed Cupil not to have contact with S.H. and to have no personal contact with any female employee at the Chicago facility while on postal premises. Cupil, while acknowledging that he received this memorandum, denies he did "bad things to females at work." He also claims that after he received this memorandum he complained to his supervisor, Michael Penna ("Penna"), that he could not comply with this memorandum because his job, in which he was responsible to find and analyze equipment failures, required him to communicate with female workers. Cupil contends that when he expressed these concerns Penna told him that he "talked to Andy about it, forget about it and just do your job."

On January 29, 2003, Cupil received a "letter of Warning" indicating that Cupil had failed to maintain regular attendance, and listed numerous days that the Postal Service considered to be "unscheduled absences." On February 13, 2003, Cupil received a

seven-day "no time off" suspension (meaning Cupil did not actually serve any time off) for separate unexcused absences. Cupil has presented documents he argues demonstrate that some of these days are legal sick days, and he generally contends that some of the days mentioned on January 29 and February 13 are duplicative of one another.

On February 14, 2003, the Postal Service issued Cupil a memorandum entitled a "Official Job Discussion." In the memorandum, John Almawi ("Almawi") stated that on February 14 at about midnight, Almawi attempted to page Cupil by radio and on the loud speaker, but Cupil did not respond. Almawi further stated that he found Cupil in a break area not performing his assigned duty. Cupil contends that he explained to Almawi that his radio was not functioning and that he could not hear the loud speaker from outside, where he was smoking.

On March 26, 2003, the Postal Service issued Cupil another emergency placement in off-duty status for "conduct unbecoming a postal employee." According to the Postal Service, it issued this placement because of an incident that day in which Cupil's supervisor, Penna, claimed that Cupil had addressed him in a manner in which he felt threatened. After Penna contacted his manager both agreed that Cupil should receive an emergency suspension. They told Cupil that he was being given an emergency suspension because of his threatening manner with Penna and because they

4

smelled alcohol on his breath. According to the Postal Service, they told Cupil that he could not leave with his car but that they would pay for a cab for him. Cupil refused the cab ride and left the Chicago facility without his vehicle. On April 9, 2003, the Postal Service issued Cupil a fourteen-day suspension as discipline for this incident.

Not surprisingly, Cupil denies this account. He states that he approached Penna that day to complain that another employee had been chosen for training in violation of the union contract, and that Penna became upset with Cupil and walked away "with a very angry look on his face." Cupil states that he was then punished more severely than other employees who were also found to have committed "conduct unbecoming a postal employee" and that he was forced to leave the property without his car. Cupil further states that he was disciplined for the March 26, 2003 incident by two and one-half days without pay and by the theft of his car so that the April 9 suspension was "discipline for being disciplined." Finally, Cupil states, without any supporting documentation, that he never served a fourteen-day suspension so that the April 9, 2003 "action is not supposed to be in file."

On March 30, 2003, the Postal Service issued Cupil a monthly review stating that he had "very poor attendance," that he "often requires assistance" to complete assigned tasks and that he had difficulty getting along with coworkers. Cupil contends that this

5

review was pretextual, and presents a copy of a review he received on January 9, 2003 that reflects that his attendance "meets requirements," that he completes assigned tasks timely without assistance, and that he gets along with co-workers and supervisors. The January 9 review also states, however, that his attendance was very good "until emergency placement" and that his attendance "needs improvement."

Cupil subsequently initiated the Equal Employment Opportunity ("EEO") process by filing, on April 25, 2003, a document entitled "Information for Pre-complaint Counseling." In this document he stated that he was alleging he had been discriminated against on the basis of "Sex-Male" and listed five incidents as the actions that prompted him to seek EEO counseling, including (1) the placement on off-duty status on March 26, 2003; (2) the April 9, 2003 suspension; (3) the February 13, 2003 notice of suspension; (4) the December 13, 2002 "Zero Tolerance Policy Reminder" and (5) his "removal from property" on November 30, 2002, for "calling postal police" to "assist in threat complaint." The Postal Service informed Cupil, through a letter dated May 27, 2003, that it had not resolved his complaint, so he was entitled to file a formal administrative complaint. Cupil subsequently filed a formal EEO complaint. In that complaint, he named Cornell Brooks ("Brooks") as the person who took the action he alleged was discriminatory. Although Cupil contends that he brought this complaint alleging

6

retaliation as well as discrimination, in the section of the complaint where Cupil could check a box to describe the type of discrimination he was alleging, he marked the box for "sex" but did not mark the box for "retaliation." He described the discrimination he allegedly experienced as follows:

> On 11-30-02 Cornell Brooks found that I was having a relationship with [S.H.]. We were keeping the relationship private. Mr. Brooks became outraged and upset, as he had been trying to establish a sexual relationship with [S.H.]. This has been verified by others. I had a <u>spotless</u> record until then. My record has been illegally ruined; and I have been harassed since. I have been told to speak to no females at work and been intimidated by other management employees. This harassment and discrimination is based on sex, Mr. Brooks' sexual desires. Jealous behavior on the part of Mr. Brooks is no reason to ruin my career.

In a letter dated June 19, 2003, the Postal Service notified Cupil that, although it was investigating his complaints concerning the events on March 26, 2003 and April 9, 2003, it was dismissing his remaining claims as untimely since they occurred more than 45 days before Cupil originally requested EEO counseling. The EEO subsequently investigated the two remaining complaints and, on June 28, 2005, issued a final agency decision finding that Cupil had failed to prove discrimination.

Cupil subsequently filed his complaint in this lawsuit. In his complaint he alleged that he was discriminated against on the basis of his sex, and that the defendant failed to stop the

7

harassment and retaliated against Cupil for asserting his protected rights. In his complaint Cupil did not give any facts to support his complaint, and so on February 10, 2006, this court ordered Cupil to supplement his complaint with a more definite statement.

I subsequently granted Cupil's motion for amendment and consolidation of his complaint. Cupil's amended complaint contends that, in addition to discrimination on the basis of sex, he was retaliated against and his constitutional rights were violated by the incidents described above (the incidents occurring on October 28, 2002, November 30, 2002, December 13, 2002, March 26, 2003 and April 9, 2003).[3] Potter then moved to dismiss Cupil's complaint. On April 27, 2006, I granted Potter's motion to dismiss in part; I concluded that Cupil's constitutional claims were time-barred but I allowed the discrimination claim to stand. On August 24, 2006, Cupil filed a second motion to consolidate his complaint and to add a new discrimination claim related to his discharge from the Postal Service. On September 29, 2006, I denied Cupil's motion for consolidation as untimely. Cupil then filed another motion to amend and consolidate. On November 17, 2006, I granted that motion in part. In ruling on that motion, I stated that, although I had previously held that since Cupil "specifically disclaimed any complaint based on retaliation, it was not fair to require the

---

[3]At this hearing, Cupil orally represented to the court that he was not claiming retaliation, but only discrimination.

defendant to defend against a new allegation of retaliation," the evidence was not likely to differ for the retaliation claim. I therefore required Cupil to respond to Potter's motion for summary judgment by showing any evidence he had that the actions taken against him were in retaliation for filing an EEO charge.

II.

Before addressing the merits of Cupil's claims, I must address Potter's contention that some of the incidents for which Cupil brings his claims are time-barred. Under 29 C.F.R. § 1614.105(a), "Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." This means that an "aggrieved person" must initiate contact with a counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Id.* at § 1614.105(a)(1). Under federal regulations, federal agencies and commissions

> shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time

9

> limits, or for other reasons considered sufficient by the agency or the Commission.

*Id.* at § 1614.105(a)(2). This requirement is a statute of limitations and not a jurisdictional prerequisite. *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995) (citing *Rennie v. Garrett*, 896 F.2d 107, 1062-63 (7th Cir. 1990)).

Cupil made an initial contact with an EEO counselor on April 25, 2003. Relying on 29 C.F.R. § 1615.105(a)(1), Potter contends that I may not consider any of the acts of discrimination that Cupil alleges occurred before March 11, 2003. This would only allow me to consider the events of March 26, 2003 and Cupil's subsequent suspension on April 9, 2003. As I interpret Cupil's EEO complaint, he alleges that Brooks, upon discovering that Cupil was having a relationship with someone with whom Brooks himself wished to become romantically involved, decided to take a series of actions against Cupil to ruin his reputation and his record at work. Setting aside the merits of these allegations, Cupil has not presented any facts from which I can conclude that the 45-day rule should not apply. He has not alleged or provided any facts from which I can conclude that any of the exceptions to the 45-day rule articulated in 29 C.F.R. § 1614.105(a)(2) should apply here. Nor has he presented any facts that would allow me to apply the continuing violation doctrine; the incidents that he complains of occurred on November 30, 2002, December 13, 2002 and February 13, 2003, and were discrete incidents that could have been the subject

10

of a complaint when they first occurred, and Cupil has not argued that he was not aware they were violations until some point during the limitations period as would be required to waive the 45-day rule. *See, e.g.*, *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (internal citations omitted). Therefore, I agree with Potter that I may only consider Cupil's claims concerning incidents that occurred after March 11, 2003.

In addition, Potter contends that Cupil may not raise his retaliation claims because he did not make any claim of retaliation in his April 25, 2003 administrative complaint. He likewise did not make this complaint in his subsequent formal EEO complaint.[4] "As a general rule, a ... plaintiff [in an employment discrimination case] cannot bring claims in a lawsuit that were not included in [his] EEOC charge." *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Although a complaint need not be a "replica" of the claim described in the charge, there must be "'a reasonable relationship between the allegations in the charge and the claims in the complaint,' and it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) (quoting *Cheek*, 31

---

[4]There is no evidence that Cupil filed a complaint with the EEOC.

F.3d at 501).[5] These same principles apply here to Cupil's EEO charge. Nothing in Cupil's EEO charge gave any indication that he was bringing claims on any other basis besides discrimination. His complaint does not refer to another charge that he filed, or allege that Brooks or anyone else had retaliated against him based on any action that he had taken to protect his rights. His formal EEO charge refers only to Brooks allegedly taking action against Cupil because Brooks was upset about a relationship Cupil had with a co-worker. A claim of retaliation could not reasonably be expected to grow out of an EEO investigation of the allegations that Cupil made in his EEO charge. *See id.* Therefore, I agree that Cupil may not now raise his claims of retaliation.

In his own motion for summary judgment, Cupil argues that Margaret Herbert of the EEOC allowed him to amend his EEOC charge to add a claim for retaliation, so that his claim for retaliation is not waived. However, Cupil has not presented this court with any copies of anything he filed with the EEOC, an amended EEO charge, or any correspondence with the EEOC or EEO requesting the amendment of such a charge. The EEO's Final Agency Decision also does not reflect that Cupil raised a claim of retaliation.

---

[5] *See also Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 476-77 (7th Cir. 1999) ("A plaintiff may not bring claims in a lawsuit that were not included in the EEOC charge. This requirement serves to enhance the administrative enforcement process by ensuring that the EEOC can conduct a full investigation while also providing the employer with advance notice of the claim and an opportunity to resolve the dispute.") (internal citations omitted).

12

Therefore, I find no evidence that Cupil has administratively exhausted his retaliation claim as required, so I cannot consider it now.[6]

### III.

With the scope of Cupil's allowed claims thus defined, I may consider the substantive merit of his allegations of sex discrimination. I must first determine whether Cupil has direct proof that Potter discriminated against him on the basis of sex, or whether he must rely on the indirect method of establishing discrimination set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Cupil has presented no direct evidence that any of the actions Brooks or the Postal Service took against him were

---

[6]Even if Cupil had exhausted this claim, I would still grant summary judgment for Potter. To establish a retaliation claim, Cupil must show that he engaged in a statutorily protected activity, and that as a result he suffered an employment action that a reasonable employee would have found to be materially adverse. *See Burlington N. & Santa Fe Ry. Co. v. White*, – U.S. –, No. 05-259, 2006 WL 1698953, at *10 (June 22, 2006); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Here, all of the actions about which Cupil complains took place before he initiated the EEO process, so none could have been in retaliation for that action. *See Tomanovich*, 457 F.3d at 664. Cupil has presented no evidence that, prior to any of the actions upon which he bases his current suit, he initiated any other EEO process or made any formal or informal complaints with the Postal Service that would constitute statutorily protected activity. *See id.* at 663 (noting that filing a complaint with an employer is a statutorily protected activity only where it indicates that discrimination or harassment occurred because of sex, race, national original, or some other protected class). Because Cupil has presented no facts from which I could conclude that he engaged in a statutorily protected activity and suffered an employment action as a result, this claim cannot survive summary judgment.

a result of his gender, and he has not presented a "'convincing mosaic' of circumstantial evidence" that would allow an inference of intentional discrimination by a Postal Service decision-maker. *See Jordan v. City of Gary, Indiana*, 396 F.3d 825, 832 (7th Cir. 2005) (citing *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). Taking the facts as alleged by Cupil as true, the Postal Service unfairly punished Cupil, but there is simply no direct evidence that connects that mistreatment to Cupil's gender.[7]

Because Cupil cannot establish direct evidence of discrimination, he must proceed under the indirect method of proof. To establish a *prima facie* case under that method, Cupil must show that he is a member of a protected class, he was performing his job

---

[7]Cupil's EEO complaint alleged that Brooks and possibly other Postal Service employees "illegally ruined" Cupil's record with the Postal Service because Brooks was angry and jealous about Cupil's relationship with S.H., in whom Brooks himself was interested. In the first place, Cupil has presented no evidence that this is true other than his own affidavit, and he has not explained how he had personal knowledge of Brooks' supposed jealousy. Cupil also states that Penna became angry when he complained to Penna about the violation of the union contract, but Cupil does not present any evidence that connects this anger or Penna's subsequent action to any gender-based animus on Penna's part. Even assuming Cupil's account of Brooks and Penna's actions is accurate, this is not direct evidence of discrimination because it does not establish that Brooks or anyone else took action against Cupil because of Cupil's gender. *See, e.g.*, *Holman v. Indiana*, 211 F.3d 399, 406 (7th Cir. 2000) (explaining that discrimination because a supervisor was jealous of the plaintiff's relationship with her spouse is not the same as discrimination because of the plaintiff's gender).

14

satisfactorily, he suffered an adverse employment action, and that the Postal Service or Brooks treated similarly situated female employees more favorably than him. *See O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). If Cupil can make this showing, then Potter must provide a legitimate, non-discriminatory explanation for the actions the Postal Service took against Cupil. *See Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531 (7th Cir. 2003). If Potter can provide such an explanation, then it is Cupil's burden to show that Potter's explanation is pretextual. *See id.*

In addition to the general requirements under *McDonnell Douglas*, Cupil must meet an additional burden because he is a man. The Seventh Circuit has consistently held that it is "the unusual employer who discriminates against majority employees." *See, e.g., Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999). For this reason, plaintiffs such as Cupil alleging reverse discrimination "must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against [men] or evidence that there is something 'fishy' about the facts at hand." *Gore v. Indiana University*, 416 F.3d 590, 592-93 (7th Cir. 2005) (quoting *Phelan v. City of Chicago*, 374 F.3d 679, 684 (7th Cir. 2003)). In *Gore*, the Seventh Circuit applied the "background circumstances" requirement to conclude that the plaintiff's Title VII claim failed because he

15

had not shown that there was anything "suspicious" about the defendant's decision not to hire him. *See Gore*, 416 F.3d at 593. Here, taking the facts in the light most favorable to Cupil, Cupil cannot show such background circumstances. He has not presented any evidence from which I can conclude, even assuming that his account of what occurred on March 26, 2003 is true and that the facts as presented by Potter are not, that it was suspicious for Brooks and Penna and the other Postal Service employees to suspend Cupil and treat him as they did.

Even assuming that Cupil could establish the required background circumstances, his claim does not satisfy the *McDonnell Douglas* test because Cupil has not shown that similarly situated female employees were treated differently. To show that another employee is similarly situated to him, Cupil must show that "there is someone who is directly comparable to [him] in all material respects." *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). "[A] court must look at all relevant factors." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). These factors include "whether the employees 'dealt with the same supervisor' and were 'subject to the same standards.'" *Patterson*, 281 F.3d at 680 (quoting *Radue*, 219 F.3d at 617-18). Where the discrimination complained of concerns discipline or discharge, a plaintiff must show that another employee who was similarly situated to the plaintiff "with respect

16

to performance, qualifications, and conduct" was treated differently. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (citing *Radue*, 219 F.3d at 617).

Taking the facts in the light most favorable to Cupil, on March 26, 2003 Cupil complained to Penna that he had not been chosen for training in violation of a union contract. According to Cupil, in response to his complaint Penna walked away, and Cupil was then forced to leave the Chicago facility without his vehicle. He was subsequently disciplined for two and one-half days without pay and then received a subsequent fourteen-day suspension. Cupil has presented two memoranda sent to other postal employees indicating that those employees were also placed on off-duty status for "Conduct Unbecoming of a Postal Employee" and "Gross Disrespect to a Supervisor." However, these memoranda do not establish that these postal employees are similarly situated to Cupil. The memoranda do not establish the gender of the postal employee involved (the first names of the employees are "Chris" and "Mercer"), do not establish that these employees were subject to the same standards, and do not explain whether these employees were disciplined for committing the same type of conduct as Cupil.[8] Because Cupil has not shown that any employee was similarly

---

[8] Further, these memoranda do not establish to what discipline these employees were subjected; they state that each employee was placed on off duty status without pay until advised otherwise; it is unclear in each case how long the employee was on off duty status.

17

situated to him, I need not address the other *McDonnell Douglas* factors, and I need not consider the validity of the non-discriminatory reasons Potter offers for the Postal Service's action.

Although Cupil does not clearly articulate a hostile work environment claim in his motion for summary judgment and in his other pleadings to this court, Cupil has contended that he was subject to "harassment" at the Chicago facility. This allegation can be interpreted as stating a claim under Title VII for a hostile work environment. A hostile work environment is one that "a reasonable person would find hostile or abusive." *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002). A plaintiff must show that the hostile work environment was "based on" his protected status. *See Valentine v. City of Chicago*, 452 F.3d 670, 680 (7th Cir. 2006) (quoting *Velez v. City of Chicago*, 442 F.3d 1043, 1048 (7th Cir. 2006)). Taking the facts in the light most favorable to Cupil and assuming that he did endure an environment that a reasonable person would find abusive,[9] Cupil has presented no evidence from which a finder of fact could conclude that he was treated poorly because of his gender. The only evidence or

---

[9] This includes an examination of those events which occurred prior to March 11, 2003, since the continuing violation doctrine applies to claims, such as hostile work environment claims, that cannot necessarily be pinpointed to a particular day. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707 (7th Cir. 2002).

18

allegation Cupil has presented is that Brooks targeted him for mistreatment because of Cupil's relationship with S.H., and that Penna was angry with him for asserting his rights under the union contract. That Brooks unfairly disciplined Cupil because he was jealous of Cupil's relationship with S.H. does not establish that Cupil was harassed because of his gender; to the contrary, it provides a neutral explanation for the mistreatment. *See e.g.*, *Holman*, 211 F.3d at 406. The same is true of Penna's anger. Taking Cupil's allegations as true, Brooks and Penna's treatment of him might have been unfair, but there is no direct evidence, or even evidence from which a reasonable finder of fact could infer, that Cupil suffered harassment or a hostile work environment because of his gender.

IV.

For the above reasons, I deny Cupil's motion for summary judgment and grant Potter's motion for summary judgment.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 16, 2007